# United States Court of Appeals for the Fifth Circuit

No. 24-40230

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2025

Lyle W. Cayce
Clerk

CEATS, Inc.,

*Plaintiff—Appellant*,

*versus*

TicketNetwork, Inc.; Ticket Software, LLC,

*Defendants—Appellees*,

*versus*

Milford Skane,

*Third Party Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:15-CV-1470

_____

Before Elrod, *Chief Judge*, and Jones and Stewart, *Circuit Judges*.

Per Curiam:[*]

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-40230

This case, which involves monetary and injunctive sanctions imposed on CEATS, Inc., for violating the district court's pre-trial protective order, is before us for a second time.

In the first appeal, we affirmed a small portion of the district court's sanctions order against CEATS and three of its representatives but vacated several other portions of the order, including the litigation-ending injunction. We also vacated the district court's attorneys' fees calculation order and remanded the issue for recalculation and a reasonably specific explanation of the fees to be imposed. On remand, the district court did not limit its reexamination to the attorneys' fees issue. Instead, on the same factual record as before, the district court made a new finding of bad faith and reimposed monetary and injunctive sanctions against CEATS and one individual. CEATS filed the instant appeal.

We again hold that the district court abused its discretion, this time by failing to provide the individual with due process post-remand, reimposing the litigation-ending injunction even though the aggrieved party suffered no substantial prejudice, and improperly increasing the attorneys' fees award's lodestar. Accordingly, we REVERSE in part, VACATE in part, and REMAND in part.

I

A

Plaintiff–Appellant CEATS, Inc., is a "non-practicing intellectual property company that owns patents for technologies used in online ticketing."[1] *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 319 (5th Cir.

---

[1] The facts underlying the parties' fifteen-year-long patent-licensing dispute and the initial sanctions orders were well documented in the first appeal. *See CEATS, Inc. v.*

2023).   Defendants–Appellees TicketNetwork, Inc., and Ticket Software LLC (together, "Ticket") "maintain an online marketplace for tickets to live events" and allow affiliate websites to view and sell their inventory.  *Id.* at 319–20.

In 2010, CEATS filed a patent-infringement lawsuit against Ticket and other defendants.  *Id.* at 319.  Mid-trial, CEATS and Ticket settled that suit, signing an agreement that gave Ticket a license to use CEATS's patents in exchange for a lump-sum payment from Ticket and ongoing royalty payments from Ticket and its affiliates (the "License Agreement").  *Id.* CEATS continued litigating against the remaining defendants.  *Id.*  At trial, the jury found that four of CEATS's patents were invalid.  *Id.*  The Federal Circuit affirmed the jury's verdict.  *Id.*; *see CEATS, Inc. v. Cont'l Airlines, Inc.*, 526 F. App'x 966, 967 (Fed. Cir. 2013).[2]

Ticket then filed the instant lawsuit, seeking, *inter alia*, a declaration that the License Agreement was unenforceable because the patents at issue were invalid.  *CEATS*, 71 F.4th at 319.  CEATS counterclaimed for breach of the License Agreement.  *Id.*  After the district court denied both parties' motions for summary judgment, Ticket voluntarily moved to dismiss its claims.  *Id.*  The parties then moved forward with discovery on CEATS's counterclaims.  *Id.* at 320.  At trial, the jury found that Ticket had breached

_____

*TicketNetwork, Inc.*, 71 F.4th 314, 319 (5th Cir. 2023).  We therefore need not recapitulate the case's entire factual and procedural history here.

[2] While this jury verdict declared four of CEATS's patents invalid, the instant case involves "over 400 other claims in 22 patents overall." *TicketNetwork, Inc. v. CEATS, Inc.*, No. 2:15-CV-1470, 2016 WL 11020344, at *2 (E.D. Tex. Oct. 25, 2016), *report and recommendation adopted*, 2018 WL 1427215 (E.D. Tex. Mar. 22, 2018).  At present, CEATS still owns several valid patents.

the License Agreement by using CEATS's patents without payment and awarded CEATS damages, fees, and costs. *Id.*

B

Before trial, during the discovery phase, CEATS moved to compel Ticket to produce a list of its affiliates (the "Affiliate List"). *Id.* The district court ordered Ticket to produce the Affiliate List but, as is common practice in patent litigation, entered an agreed protective order governing the production of certain documents. *Id.* The protective order prohibited CEATS from using the list for any purpose other than the present litigation, prohibited CEATS's in-house representatives from accessing the Affiliate List and other "highly confidential" documents, and required anyone who did access the documents to take reasonable care to ensure confidentiality. *Id.* Ticket produced the Affiliate List in a password-protected, encrypted ZIP file labeled "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY" that contained an Excel spreadsheet. *Id.* But the "native spreadsheet itself—that is, the actual affiliate list—did not include a confidentiality designation in the file name or in the spreadsheet's text." *Id.*

Over a year after trial, CEATS's then-CEO, Milford Skane, asked CEATS's outside litigation consultants, Sonja McAuliffe and Dr. Brian Billett, to send him a "non-confidential" list of Ticket's affiliates. *Id.* Pursuant to the protective order, McAuliffe and Dr. Billett were authorized to access the Affiliate List, but Skane was not. *Id.* Nonetheless, McAuliffe and Dr. Billett each separately sent Skane a copy of the native spreadsheet containing the Affiliate List, which bore no confidentiality designation. *Id.* Skane then sent the Affiliate List in an e-mail to Ticket's CEO, as a "starting point" to revive the companies' stalled settlement negotiations. *Id.* Skane also sent the Affiliate List to two other CEATS employees.

No. 24-40230

Ticket responded by filing a "Motion for an Order to Show Cause why CEATS or Others Should Not Be Sanctioned for Violation of Protective Order." *Id.* After an initial evidentiary hearing, the district court ordered further discovery and appointed forensic investigators to prepare and submit reporting on the potential discovery violations. *Id.* at 320–21. Following additional hearings, the district court issued a sanctions order holding that Skane, McAuliffe, and Dr. Billett (together, the "Individuals") had violated the protective order. *Id.* at 321.

In its sanctions order, the district court determined that Skane had violated the protective order by: (1) transmitting, disclosing, or communicating materials designated "highly confidential" to persons who were not entitled to view those materials; and (2) failing to observe the duty mandated by the protective order to take reasonable care with such materials. It also concluded that Skane's deletion of large swaths of e-mails and his insistence that he had not viewed the Affiliate List—despite contradictory forensic evidence—as probative of Skane's awareness of this risk and his general culpability. The district court further concluded that, because Skane was acting within the course and scope of his employment, CEATS had also violated the protective order. *Id.* Moreover, the district court held that McAuliffe and Dr. Billett had violated the protective order by sending the Affiliate List to Skane and by failing to exercise due care for the confidential information in their possession. It ultimately determined that the record evinced "(at least) a pattern of reckless disregard" for the protective order.

The sanctions order: (1) enjoined CEATS and the Individuals from "contacting, seeking licensing fees, suing, or seeking damages from or related to Ticket[ ] or any of the companies or websites contained in the . . . affiliate

list" for a thirty-month period (the "Litigation Bar");[3] and (2) imposed joint and several liability on CEATS and the Individuals and ordered them to pay Ticket's reasonable attorneys' fees, costs, and expenses incurred in litigating the protective order violation. *Id.* The district court also issued a calculation order tabulating the reasonable expenses related to the protective order violations. *Id.* It imposed a total monetary sanction of $505,454.13 on CEATS and the Individuals, jointly and severally. The district court further denied as moot CEATS's motion for an order tolling the applicable limitations periods for its claims against Ticket. *Id.* at 326. CEATS and the Individuals timely appealed.

## C

In the first appeal, this court vacated the district court's monetary sanctions against the Individuals, reasoning that the Individuals had not received due process because Ticket's show-cause motion had not provided notice that Ticket sought sanctions against them.[4] *Id.* at 323–24. And we held that the district court had abused its discretion by not affording the Individuals a pre-deprivation opportunity to defend themselves at a hearing. *Id.* at 324.

We also vacated the Litigation Bar as to CEATS and the Individuals. *Id.* at 325. We determined that, on account of its thirty-month prohibition on lawsuits against Ticket and its affiliates, the Litigation Bar constituted a litigation-ending sanction for which a finding of bad faith was required under

---

[3] In the first appeal, we referred to this injunction as the "Licensing Bar." *CEATS*, 71 F.4th at 321. On remand, the district court clarified that this was more appropriately referred to as the "Litigation Bar" because a separate "Licensing Bar" was instituted before the discovery violations. We use the proper term, "Litigation Bar," in this opinion.

[4] We did, however, affirm that part of the sanctions order that imposed joint and several monetary liability on CEATS. *See id.* at 326.

either Federal Rule of Civil Procedure 37(b) or the district court's inherent power to sanction. *Id.* But we concluded that the district court had instead found that CEATS and the Individuals acted "recklessly," erroneously equating that recklessness with bad faith. *Id.* at 325. We also vacated the sanctions order insofar as it mooted CEATS's tolling motion, explaining that "if the district court chooses *not* to re-impose the [Litigation] Bar against CEATS on remand, then [CEATS's tolling motion] will no longer be moot." *Id.* at 326.

Turning to the calculation order, we held that the district court had abused its discretion in its calculation of attorneys' fees awarded to Ticket. *Id.* Specifically, we held that the district court had failed to explain the "lodestar" rates that it had approved under the first step of the calculation, because it had not addressed the significant disparity between the fees awarded to CEATS earlier in the litigation and the rates it had approved for purposes of the calculation order. *Id.* at 327. We then explained that the district court had recited, but not applied, the 12 factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), to determine whether to adjust the lodestar amount at step two of the calculation. *Id.* at 327–28. We therefore vacated the calculation order and remanded for the district court to recalculate the fees and provide a "reasonably specific explanation" of both the rates that it approved and the *Johnson* adjustment factors. *Id.* at 328.

D

On remand, the parties submitted briefing, and the district court ordered a hearing on the discovery order violation and sanctions. The district court stated that the order "serve[d] as notice that sanctions are pending and will be considered by the [c]ourt against CEATS and the Individuals," and that the hearing would allow the parties to present a defense to possible

sanctions.[5]  After the hearing, which included live testimony from Skane, McAuliffe, and their counsel, the district court reimposed monetary and injunctive sanctions.  The district court acknowledged that it had erred by imposing litigation-ending sanctions based on its wrongful equating of recklessness with "bad faith."  But it reasoned that because it had originally found that CEATS and the Individuals were "at least" reckless, there was no conflict with a finding of willful or intentional bad faith.  Moreover, because the law-of-the-case doctrine precludes only factual findings that "conflict" with earlier factual findings, the district court determined that it was not precluded from finding bad-faith conduct on remand.

The district court explicitly found that Skane—and, in turn, CEATS—had acted in bad faith in violating the protective order because: (1) Skane signed the protective order; (2) Skane attended discovery hearings at which the parties fought over production of the Affiliate List; (3) Skane knew that the Affiliate List was confidential when it was produced; (4) Skane made false statements to the court; and (5) Skane destroyed evidence to obfuscate his discovery misconduct.  Having determined that Skane and CEATS acted in bad faith, the district court concluded that the first two requirements for litigation-ending sanctions under Rule 37—willfulness and commission of the violation by the client rather than counsel—were met.

_____

[5] Dr. Billett died during the pendency of the first appeal and therefore did not participate in the post-remand proceedings.  Prior to his death, however, Dr. Billett had paid Ticket approximately $90,500 under the sanctions order.  On remand, the district court granted Ticket's motion to deposit those funds into the court registry pending resolution of the case.  But because the district court thereafter determined that it would not reimpose sanctions against Dr. Billett, it later ordered the funds returned to Dr. Billett's estate.  Interestingly, Ticket deposited only $90,000 into the district court's registry, and the parties have not addressed or mentioned the remaining $500 paid by Dr. Billett.

No. 24-40230

The district court then turned to the remaining requirements for litigation-ending sanctions. It determined that Ticket had been substantially prejudiced by CEATS's bad-faith conduct, opining that "[t]he dissemination of Ticket[]'s affiliate list . . . is a bell that cannot be unrung." In doing so, the district court referenced Ticket's testimony that its Affiliate List could be used by a competitor to lure away its business or by CEATS to identify patent litigation and licensing targets or to leverage favorable settlement. The district court also determined that the injunctive sanctions were related to the claims at issue and that a lesser sanction could not substantially achieve the desired deterrent effect, because a lesser sanction would put a price on violating a court's protective orders in a harmful manner. The district court therefore reimposed the injunctive sanctions for the period that they were vacated after the first appeal, which was approximately nine months.[6]

Turning to the Individuals' liability, the district court determined that its post-remand procedures afforded the Individuals due process because they were put on notice of the possible sanctions pending against them. It held that the post-remand hearing provided the Individuals with an opportunity to present their arguments, testify, make objections, and mount their defense. It also held that the post-remand discovery requested by the Individuals would be duplicative or unhelpful and was therefore unnecessary. After holding that all the Individuals received due process, the district court found that only Skane acted in bad faith. It clarified that while McAuliffe and Dr. Billett's violations of the protective order were reckless, their violations were not bad-faith, willful abuses of the judicial machinery, as required for

---

[6] According to CEATS, the district court's injunctions expired on December 22, 2024.

monetary sanctions. The district court therefore only reimposed monetary sanctions as to Skane.

Concerning its prior calculation order, the district court reasoned that its initial lodestar analysis was reasonable except for the hourly rate billed for one of Ticket's associate attorneys. The district court reduced the rate of that attorney to match the hourly rates of other associate attorneys at the same firm. Moreover, pursuant to our mandate, the district court attempted to explain the disparity between the rates that it had approved for CEATS's attorneys and the rates that it had approved for Ticket's attorneys. Citing the apparent heightened technical nature of the investigation into the discovery violations and Ticket's law firm's familiarity with the Eastern District of Texas, the district court concluded that its prior determination of the lodestar at step one was reasonable, apart from the one attorney's hourly rate. It therefore held that the lodestar at step one should have been $471,220.38—a $34,233.75 reduction from the $505,454.13 that it had initially awarded.

The district court then assessed each *Johnson* factor and determined that a small upward adjustment was warranted based on two factors: (1) litigation of CEATS's discovery violations required extensive time and labor, which was amplified by the Individuals' obfuscation efforts; and (2) the protective order violations caused substantial time limitations, forcing Ticket to have to move quickly to seek relief. The district court ultimately held that those two *Johnson* factors supported a 5% upward adjustment and recalculated the total amount in fees owed to Ticket as $494,781.40.

In sum, the district court: (1) reinstated its prior Litigation Bar against CEATS and Skane for a period of 275 days; (2) redenied as moot Ticket's motion to toll the limitations period for its claims against CEATS; and (3) granted Ticket attorneys' fees in the amount of $494,781.66, to be jointly

No. 24-40230

and severally collected from CEATS and Skane.  CEATS and Skane again timely appealed.

## II

In the instant appeal, we initially must determine whether the district court was precluded from reimposing the litigation-ending sanctions against CEATS and Skane and the monetary sanctions against Skane.

"We review *de novo* a district court's interpretation of our remand order, including whether the law-of-the-case doctrine or mandate rule forecloses any of the district court's actions on remand." *United States v. Pineiro*, 470 F.3d 200, 204 (5th Cir. 2006) (emphasis omitted).  "Under the law of the case doctrine, an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal," *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002), including those issues decided explicitly or by implication, *Crowe v. Smith*, 261 F.3d 558, 562 (5th Cir. 2001).[7]  The mandate rule, which is a "corollary" of the law-of-the-case doctrine, *Tollett*, 285 F.3d at 364, "provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court."  *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002); *see also Franklin v. Regions Bank*, 125 F.4th 613, 630 (5th Cir.

---

[7] The law-of-the-case doctrine is not jurisdictional, but rather a discretionary practice that "expresses the practice of courts generally to refuse to reopen what has been decided." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912); *see also* 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478 (3d ed. 1998) ("The courts are understandably reluctant to reopen a ruling once made . . . . Reluctance, however, does not equal lack of authority.  The constraint is a matter of discretion.  So long as the same case remains alive, there is power to alter or revoke earlier rulings.").

2025) ("The mandate rule requires a district court on remand to effect our mandate and to do nothing else.").

Both CEATS and Skane argue that the law-of-the-case doctrine and the mandate rule preclude the district court from reimposing the litigation-ending sanctions that we vacated in the first appeal. CEATS contends that the district court ignored our prior finding that it acted recklessly, which is inconsistent with a finding of bad faith and willfulness and therefore cannot satisfy Rule 37(b). CEATS also asserts that the law-of-the-case doctrine binds the district court to its original finding of recklessness and the district court's new sanction theory, which it contends was "cobble[d] together . . . and modifie[d] its earlier factual findings to find a brand-new protective order violation by CEATS," disregards our mandate. Skane, for his part, argues that the evidentiary record does not support departure from either the law-of-the-case doctrine or the mandate rule. Skane also contends that the district court was biased against him and took a "vindictive path" with its sanctions. Both CEATS and Skane therefore assert that the district court's renewed sanctions order should be reversed.

Ticket responds that neither the law-of-the-case doctrine nor the mandate rule precludes the district court from making an express finding of bad faith on remand. Citing the district court's renewed sanctions order, Ticket argues that the district court's "prior finding of 'at least' reckless conduct does not prohibit [it] from now finding that . . . Skane's conduct was in bad faith." Moreover, Ticket further agrees with the district court that, in finding bad faith on remand, the district court did not "reexamin[e] an issue decided on appeal" because we "did not find that there was no bad faith." Instead, Ticket contends that our ruling was merely that "reckless conduct cannot be equated with bad faith."

Ticket further notes that our opinion in the first appeal left the door open for a possible reimposition of the Litigation Bar because we stated that, "if the district court chooses *not* to re-impose the [Litigation] Bar against CEATS on remand, then [CEATS's tolling motion] will no longer be moot." *CEATS*, 71 F.4th at 326. And Ticket emphasizes that our remand of the case—rather than reversal—means that we did not intend to preclude the district court from making a subsequent bad-faith finding.

We hold that the district court was not precluded by the law-of-the-case doctrine or the mandate rule from reimposing sanctions against CEATS or Skane. This includes even its subsequent finding of bad faith on remand.

CEATS and Skane contend that the district court's reimposition of litigation-ending and monetary sanctions disregards our mandate, but we must interpret our earlier mandate "reasonably and not in a manner to do injustice." *United States v. Bell Petroleum Servs., Inc.*, 64 F.3d 202, 204 (5th Cir. 1995). And based on our review, we own that there was some ambiguity as to what the district court was to address on remand, for which we give the district court—and, subsequently, Ticket—credit. Namely, when we vacated the district court's denial of CEATS's tolling motion as moot following our first vacatur of the Litigation Bar, we noted that the district court might "choose[] *not* to re-impose the [Litigation] Bar against CEATS on remand." *CEATS*, 71 F.4th at 326. In doing so, we implicitly acknowledged that the district court had the choice to reimpose the Litigation Bar on remand instead of limiting its reexamination to the attorneys' fees issue. And had we expressly decided that the record did not definitively support a finding of bad faith against CEATS and Skane, our acknowledgement that the district court had the discretion to reimpose the Litigation Bar would be inconsistent with that holding.

Moreover, the district court's bad-faith finding did not violate the law-of-the-case doctrine by reexamining an issue of law or fact already decided in the first appeal. *See Tollett*, 285 F.3d at 363. Our first opinion did not expressly hold that there was no bad faith on the record before us. We merely held that "the district court did not make the bad-faith finding that is a prerequisite to litigation-ending sanctions under Rule 37(b)." *CEATS*, 71 F.4th at 325. We ultimately concluded that the district court improperly equated recklessness with bad faith, and we vacated the Litigation Bar on that ground. *Id.* at 325–26. But our opinion did not explicitly prohibit the district court from applying the correct definition of bad faith on remand to reassess whether the Litigation Bar was still an appropriate sanction. *See id.* Therefore, the district court did not sidestep any explicit directive barring its ability to find bad faith on remand.

Simply put, the universe of issues that the district court was allowed to revisit in addition to the attorneys' fees issue was unclear at best. And because a district court must implement "both the letter *and the spirit*" of our mandates, and here there was ambiguity as to the latter, the district court did not err in reimposing the Litigation Bar based on its finding of bad faith on remand. *Matthews*, 312 F.3d at 657 (emphasis added); *see id.* (holding that a district court "may not disregard the *explicit* directives of [the appellate] court" (emphasis added)). Accordingly, we hold that neither the law-of-the-case doctrine nor the mandate rule precluded the district court from reimposing sanctions against CEATS and Skane.

## III

Although we have held that the district court was not precluded from reimposing sanctions against CEATS and Skane on remand, we must still determine whether the specific sanctions it imposed were proper.

## A

We begin with the monetary sanctions reimposed against Skane and hold that the district court abused its discretion in reimposing these sanctions.

A district court invokes its inherent power when it imposes sanctions against non-parties, and that power should be "exercised with great caution." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "We review de novo a district court's invocation of its inherent power and the sanctions granted under its inherent power for an abuse of discretion." *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014). "A district court abuses its discretion in imposing sanctions when it 'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 867 (5th Cir. 2021) (quoting *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 134 (3d Cir. 2009)). Moreover, to satisfy due process requirements, the district court must allow a party facing sanctions "'an opportunity to present their objections' and 'an opportunity to mount a defense.'" *CEATS*, 71 F.4th at 323 (citations omitted).

Among other persuasive arguments, Skane contends that he was not afforded due process on remand because he was not given an opportunity to conduct discovery or brief the merits of Ticket's sanctions motion. Skane asserts that the district court erred in allowing the other participants to conduct discovery and develop the record in a sanctions proceeding but denying him the same opportunity post-remand when he was the target of potential sanctions for a second time.

Ticket provides the cursory response that Skane was afforded due process because he was allowed to file three briefs and to testify and call other witnesses at the post-remand sanctions hearing. Ticket further contends that the district court adhered to our due process guidance and that due process does not require the district court to grant additional discovery—although it does not cite any case law for this proposition.

We agree with Skane and hold that he was not afforded due process on remand. In the context of a renewed monetary sanction award of close to $500,000, the district court was required to give Skane the opportunity to mount a defense. *Id.* The district court, however, refused to allow additional discovery to the Individuals, reasoning that such discovery would be duplicative because the record was fully developed. But the record that framed the issues before the district court was developed over the course of more than two years, and the Individuals were not given an opportunity to participate in its development for their own defense.

Indeed, Skane's ability to meaningfully participate in the sanctions proceedings came only *after* we vacated the Individuals' liability in the original Sanctions Order—more than a year after Dr. Billett passed away. As we noted earlier, Dr. Billett passed away during the pendency of the first appeal. But because Skane's participation was limited to the post-remand proceedings, Dr. Billett's death is relevant to Skane's inability to mount a defense because Dr. Billett's testimony likely would have been key to Skane's attempts to rebut the *mens rea* element of the district court's bad-faith finding.

We do acknowledge that the district court's post-remand briefing schedule and hearing gave Skane notice of and the opportunity to object to the possible sanctions. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980) ("Like other sanctions, attorney's fees certainly should not be

assessed lightly or without fair notice and an opportunity for a hearing on the record."). However, we hold that Skane's inability to conduct additional discovery ultimately affected his ability to "mount a defense." *See id.*; *see also Roy v. ADM Grow Mark*, 2000 WL 329273, at *4 n.2 (5th Cir. Mar. 22, 2000) (holding that the appellant's resistance to being deposed "prejudiced [the appellee's] ability to mount a defense against him").

Indeed, where Skane's conduct was found to be reckless initially, the district court found the same conduct to support bad faith on remand—while essentially calling him a palpable liar. Without the benefit of additional discovery, which could have rebutted or otherwise negated the district court's renewed bad-faith findings, Skane was relegated to defending himself against almost $500,000 in sanctions with briefing and live testimony supported only by a closed record—a record in that he was not allowed to participate in developing.

In sum, Skane's inability to conduct discovery and present additional evidence on the *mens rea* element necessary to support the district court's finding of bad faith, coupled with the death of a key witness and his limited participation post-remand, does not square with due process requirements. We therefore REVERSE the district court's post-remand sanctions order to the extent it reimposes monetary sanctions against Skane.[8]

---

[8] Skane also argues that the district court's inherent power does not authorize the reimposed sanctions and that the district court abused its discretion by levying excessive sanctions against him without considering his financial status. Because we hold that Skane was not afforded due process on remand, we need not address these arguments.

## B

We turn next to the Litigation Bar, holding that the district court abused its discretion in reimposing it against CEATS and Skane because the discovery violation presented no substantial prejudice to Ticket.

Where Rule 37(b) sanctions would be "litigation-ending," the district court must make four additional findings to satisfy our case law's heightened standard: "(1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation 'substantially prejudice[d] the opposing party'; and (4) a lesser sanction would not 'substantially achieve the desired deterrent effect.'" *Law Funder, LLC v. Munoz*, 924 F.3d 753, 758–59 (5th Cir. 2019). We review the imposition of such sanctions for an abuse of discretion. *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 590 (5th Cir. 2008). "A court abuses its discretion to impose sanctions when a ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Matta v. May*, 118 F.3d 410, 413 (5th Cir. 1997).

CEATS and Skane make several arguments as to how the district court erred when it reimposed the Litigation Bar: (1) the district court's finding of bad faith was not supported by "clear and convincing proof"; (2) any harm to Ticket caused by CEATS's discovery violation is "contrived," "speculative," and "entirely hypothetical"; (3) the district court erred in finding that the Litigation Bar was the only sanction that could substantially address the violation; (4) the Litigation Bar is impermissible under Rule 37(b); and (5) the district court erred in reimposing the Litigation Bar for an additional 275 days. Ticket responds that: (1) CEATS waived its "clear and convincing" standard of review argument because it was not

raised before the district court;[9] (2) the district court met the "clear and convincing" standard, even if it does apply; and (3) the district court established each of the requirements for Rule 37(b) sanctions.

CEATS's argument regarding the substantial prejudice prong is the most persuasive, and we agree that it was not met. Because the Litigation Bar was one of the harshest sanctions that could be levied against CEATS and Skane, the district court was required to find some "substantial" or "palpable" prejudice to Ticket as a result of the discovery violation. *FDIC v. Conner*, 20 F.3d 1376, 1380 n.3 (5th Cir. 1994). But the evidence assessed by the district court does not support such a finding. The district court's analysis as to substantial prejudice is essentially based on a *risk of harm*, buttressed by hypothetical findings that: (1) CEATS is a competitor to Ticket; (2) CEATS *could* use the Affiliate List to leverage a settlement; (3) a competitor *could* use the list to poach Ticket's business; and (4) CEATS *could* use the list to source litigation or licensing targets among Ticket's affiliates and customers. Not only are these findings speculative, but they are also unsupported by the record.

At the district court's initial show-cause hearing in 2021, the district court acknowledged that Ticket had suffered no harm at that time. The district found that "[t]he testimony seem[ed] to be as of th[at] moment in time, [that] there ha[d] *not* been concrete damages or harms visited upon [Ticket] but for the expense and time and cost of pursuing this [violation]." The same is still true now, more than four years later. While the district court found that Ticket's harm "need not be immediately quantifiable to be substantial," the record contains no evidence of *any* harm to Ticket by virtue

---

[9] This argument is unavailing because "parties in litigation cannot waive the applicable standard of review." *Cargill v. Garland*, 57 F.4th 447, 466 (5th Cir. 2023), *aff'd*, 602 U.S. 406 (2024).

of the discovery violation—let alone "substantial" harm. *Id.* As CEATS aptly points out, Ticket has proffered no evidence that a competitor has "lured away" any of Ticket's business or that any one of its thousands of affiliates has been sued as a result of the disclosure of the Affiliate List.

CEATS also is not Ticket's competitor. As we recognized in the first appeal, CEATS is an "intellectual property company that owns patents for technologies used in online ticketing." *CEATS*, 71 F.4th at 319. Ticket, by contrast, "maintain[s] an online marketplace for tickets to live events." *Id.* at 319–20. The record is clear that CEATS has never sold tickets, nor does it compete for the same business as Ticket. Moreover, the fact that CEATS *could* sue Ticket or its affiliates for patent or License Agreement violations is not indicative of a competitive landscape or of any palpable harm.

Further, the district court's finding that CEATS has attempted to leverage a settlement using the Affiliate List, which in turn has caused substantial harm to Ticket, is untenable for three reasons: (1) the Affiliate List was sent to Ticket's own CEO;[10] (2) no settlement was reached, nor was there any other harm caused to Ticket; and (3) any harm that was caused by an attempted settlement using the Affiliate List came to CEATS by virtue of the district court's sanctions and subsequent attorneys' fees order.

Put plainly, the record evidence only supports a theoretical risk of harm to Ticket. This hypothetical harm is insufficient to support litigation-ending sanctions. *See Conner*, 20 F.3d at 1380 n.3. We therefore hold that the district court abused its discretion in reimposing the Litigation

_____

[10] We also observe that this fact undercuts the district court's post-remand theory supporting its willful, bad-faith finding as to Skane's conduct. The district court's theory is that Skane knew of the confidential nature of the Affiliate List he received—the most valuable piece of Ticket's operation—even though he asked for a non-confidential list, only to immediately send the same confidential list to Ticket's CEO.

Bar, and we REVERSE the district court's post-remand sanction order to the extent that it imposes the Litigation Bar on CEATS and Skane. Because the Litigation Bar will not be reimposed, we also VACATE the district court's post-remand sanctions order to the extent it dismisses CEATS's tolling motion as moot.

IV

Last, we address the post-remand attorneys' fees issue.

In the first appeal, we vacated the calculation order and remanded for the district court to recalculate the attorneys' fees and to provide a "reasonably specific explanation" of the rates that it approved and the *Johnson* adjustment factors. *CEATS*, 71 F.4th at 328. On remand, the district court followed our directive but also increased its lodestar calculation by 5% based on the *Johnson* factors. We review its initial determination of reasonable hours and reasonable rates for clear error and its application of the *Johnson* factors for abuse of discretion. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995).

CEATS contends that the district court's increase to Ticket's attorneys' fees award was in error because it granted Ticket a double recovery. CEATS primarily argues that the district court improperly considered how "the obfuscation efforts by the Individuals increased the time and labor required" both when calculating the lodestar at step one and when applying the first *Johnson* factor at step two. CEATS also contends that Ticket's attorneys' fees should be reduced further because the claimed attorneys' fees were excessive even after lodestar reductions, there was no real harm to Ticket, and most of Ticket's fees did not involve "highly technical" work. CEATS further argues that the district court's increase to Ticket's fees after CEATS's successful appeal "contravenes the law" and "equates with judicial vindictiveness."

Ticket maintains that the district court properly calculated attorneys' fees on remand and explained its fee award in great detail. The district court's explanation, Ticket asserts, includes the discrepancy between its previous fee award to CEATS, its decision to reduce one attorney's rate and number of hours recoverable, and its application of the *Johnson* factors. Ticket also argues that CEATS's argument that the first *Johnson* factor "represents an inherent 'double dip'" is untenable because "[t]he lodestar looks at the hours spent and *Johnson* factor 1 looks at the hours required."

We agree with CEATS that the district court abused its discretion in increasing the attorneys' fees award on remand. But we do not find error with the district court's analysis as to the lodestar calculation at step one. In the first appeal, we observed that "there may be good reasons for the discrepancy in reasonable hourly rates" due to the technical nature of the investigation, but the district court failed to give a specific reason for such a disparity in approved hourly rates. *CEATS*, 71 F.4th at 327. We conclude that the district court resolved the deficiencies as to step one on remand.

The district court sufficiently explained the disparity between the hourly rates of the lawyers at the parties' firms, including: (1) the highly technical nature of the forensic investigation; (2) the sanctions proceedings contrasted against the breach of contract dispute in which CEATS was awarded attorneys' fees; (3) the national prominence of Ticket's counsel, Fish & Richardson; and (4) Fish & Richardson's familiarity with the Eastern District of Texas. Moreover, the district court explained that, while the lodestar it approved prior to the remand was reasonable, a reduction of an unreasonable hourly rate of one Fish & Richardson associate attorney was appropriate. The district court's post-remand lodestar calculation at step one resulted in a $34,233.75 reduction to its original award of $505,454.13—leaving a new lodestar of $471,220.38. We therefore hold that the district

court provided the requisite "reasonably specific explanation" as to the lodestar at step one. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010).

We turn next to the district court's application of the *Johnson* factors. Importantly, because of the "strong presumption" that the lodestar represents a sufficient fee, *id.* at 554, enhancements must necessarily be rare—and this is not a rare case. And although we give the district court credit for its analysis of the *Johnson* factors at step two, we hold that the district court abused its discretion in its application of two factors.

The district court improperly increased the lodestar by 5% based on *Johnson* factors 1 and 7—the time and labor required and the time limitations imposed by the client or circumstances—because those factors were already accounted for by the lodestar. We have cautioned that "the district court must be careful . . . not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993); *see Jason D.W. by Douglas W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) ("Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." (internal citations omitted)).

At step one, the district court calculated the lodestar, correctly multiplying Ticket's counsel's reasonable hourly rates by the number of hours expended by participating attorneys. *See Jason D.W.*, 158 F.3d at 208. The lodestar therefore properly reflected an objective measure of the value of Ticket's counsel's services. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."). Also at step one, the district court explained the disparity of the parties' fee awards based on the "highly technical" work, the resulting analysis of the forensic investigations,

and "unpacking" Skane and Dr. Billett's deleted files and emails the day before imaging. These factors, in addition to the total attorney hours billed, served as the bases for the hours reasonably expended by Ticket's attorneys at a reasonable rate. *See Kellstrom*, 50 F.3d at 324.

At step two, however, the district court made a 5% upward adjustment to the lodestar as to factor 1—time and labor required. But the district court's bases for the *Johnson* adjustment mirror the time (billed hours) and labor (number of attorneys) that was already accounted for at step one. To be sure, the district court cites the litigation surrounding the discovery violation as extensive due to the multiple proceedings, discovery, and various rounds of briefing. But the cited attorney activities can be measured adequately and objectively by calculating the number of hours that the participating attorneys spent on the tasks—*i.e.*, the lodestar. *See Hensley*, 461 U.S. at 433.

Ticket contends that the lodestar looks at hours "spent" but *Johnson* factor 1 looks at hours "required," contending that if there was no difference between the two, then *Johnson* factor 1 should be eliminated. This argument is unavailing. The hours *required* for litigation and the hours *spent* on litigation call for the same information to be calculated—the total attorney hours reasonably expended on the litigation, excluding hours that are excessive, duplicative, or inadequately documented. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Indeed, the district court's double-counting at step two is exactly why district courts should exercise caution in their fee analyses, because "these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'" *Perdue*, 559 U.S. at 553.

Moreover, the district court's upward adjustment under *Johnson* factor 7—the time imposed by the client or circumstances—suffers from the same flaw. The district court's rationale for the adjustment was that there

should be a premium afforded to urgent work that delays a lawyer's other legal work. But placing certain legal matters as priority over others is not an abnormal occurrence in an attorney's work—especially in an extremely technical, complex, and labor-intensive dispute. And this factor would also presumably be included in the number of hours billed. Thus, we hold that the district court abused its discretion by making the 5% upward adjustment based on *Johnson* factors 1 and 7.

We also observe that upward adjustments to the lodestar are permissible, but "such modifications are proper only in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings by the lower courts." *Shipes*, 987 F.2d at 320; *see Perdue*, 559 U.S. at 553–54. And the "complex and highly technical" nature of the litigation does not "render a case 'rare' or 'exceptional' for purposes of enhancing the lodestar amount." *Shipes*, 987 F.2d at 321 Such is the case here.

And that is not the end of our inquiry.

The Supreme Court has held that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440.

To be sure, we have held that a district court abuses its discretion when it fails to adequately consider the result sought and obtained relative to the fee award. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) (holding that the district court abused its discretion "by failing to give adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the result sought," and reversing an award of

attorneys' fees that was larger than the amount of damages awarded).  Having now reversed the Litigation Bar because Ticket suffered no "palpable" or "substantial" prejudice from CEATS's discovery violation, we now also hold that Ticket has obtained limited relief on its motion for sanctions.

Therefore, on remand, the district court will need to determine whether any other *Johnson* factor supports a decrease to the lodestar.  *See Combs v. City of Huntington*, 829 F.3d 388, 395 (5th Cir. 2016).  Here, we observe that Ticket's limited relief likely supports such a decrease to the fee award under *Johnson* factor 8—the amount involved and results obtained.[11] *See Hensley*, 461 U.S. at 440.

As additional support for a decrease to the lodestar, the district court should also account for the fact that Ticket suffered no harm over the last five years as a result of CEATS's discovery violation and the fact that the award of attorneys' fees was more than CEATS's jury award in the underlying litigation.[12]  *See Migis*, 135 F.3d at 1048.

Accordingly, we VACATE the district court's post-remand attorneys' fees award to be paid by CEATS and REMAND for the district court to conduct a revised calculation of the attorneys' fees award consistent with this opinion.

---

[11] On the first remand, the district court found this factor to be neutral, conceding that the lodestar amount already accounted for this factor.  Nonetheless, in its analysis, the district court noted that it had already found substantial harm that was not easily quantifiable.

[12] At trial, the jury awarded CEATS $459,800 to reasonably compensate it for Ticket's breach of contract.  Post-remand, the district court granted Ticket its costs and fees in the amount of $494,781.66.

No. 24-40230

## V

Accordingly, we REVERSE the district court's post-remand sanctions order to the extent it imposes a monetary sanction against Skane and a litigation-ending injunction against CEATS and Skane. Because the litigation-ending injunction will not be reimposed, we also VACATE the district court's post-remand sanction order to the extent it dismisses CEATS's tolling motion as moot. In addition, we VACATE the district court's post-remand attorneys' fees award to be paid by CEATS and REMAND to the district court only so that it may conduct a revised calculation of the attorneys' fees award consistent with this opinion.

No. 24-40230

EDITH H. JONES, *Circuit Judge*, concurring and dissenting:

Although I am pleased to concur in nearly the entirety of my colleagues' determinations, I respectfully disagree with the decision to remand for the second time the sole issue of attorneys' fees owed by CEATS for its violation of the court's protective orders.

It seems no accident that in the district court's two previous assessments of fees against CEATS and Skane, that court awarded about as much, or more, than the jury awarded CEATS against Ticket. And the panel majority, while pointing this out, also gingerly states it is "likely" that the fees to Ticket should be reduced on the next go-round. Given the imperviousness of the district court following the first appeal toward changing its sanctions order and fee award (leading to our near-complete reversal here), I think both parties' time and resources will be wasted with yet a third round of fee litigation in the trial court. A better display of appellate decisionmaking would have been for us simply to slash the fee award by at least a couple hundred thousand dollars, in recognition of Ticket's low success rate on sanctions, and enter judgment. I respectfully dissent.